UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

WILLIAM M. HILL,

        Plaintiff,                      Case No. 1:15-cv-1143

v.                                          Honorable Robert Holmes Bell

BONITA HOFFNER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed, with the exception of Plaintiff's retaliation claim against Defendant Losinski.

**Factual Allegations**

Plaintiff currently is incarcerated at the Lakeland Correctional Facility (LCF). In his *pro se* complaint, Plaintiff sues the following LCF employees: Warden Bonita Hoffner, Deputy Warden Linda Beckwith, Lieutenant (unknown) Scheidler, Sergeant (unknown) Losinski, Lieutenant (unknown) Borst, Corrections Officer (unknown) Friend and Corrections Officer Donna Houtz.

Plaintiff alleges that on or about May 13, 2011, he "approached Houtz and informed her of his right to choose where he wanted to reside within a 'two-man' room, which would be racially balanced." (Compl. ¶ 9, ECF No. 1, PageID.3.) Houtz responded that she was going to move Plaintiff up front where she could keep an eye on him. Plaintiff threatened to file a complaint with Houtz' superior for racial discrimination because Plaintiff was first on the list to move to the next open room. On May 30, 2011, Houtz wrote a minor misconduct ticket against Plaintiff for possession of hobbycraft items. Plaintiff contends that the misconduct was retaliation for Plaintiff accusing Houtz of racism and complaining to her superior. Plaintiff contends that Houtz continued to retaliate against him by conducting unauthorized cell searches and bringing false misconduct charges against him. On October 21, 2011, Houtz allegedly wrote a false major misconduct against Plaintiff for possession of contraband. Plaintiff asserts that as a result of the major misconduct conviction, he lost his job as a geriatric aid and was confined to his room for a period of sanctions.

On January 22, 2011, while Plaintiff was still working as a geriatric aid, Defendant Losinski told Plaintiff that he could no longer eat until his housing unit was called to the chow hall. Apparently, Plaintiff sometimes ate his meal while escorting a geriatric prisoner to the cafeteria. A month later, Losinski accosted Plaintiff while he was obtaining a tray for a geriatric prisoner under his care. Plaintiff explained himself and sought out Losinski's supervisor, Lieutenant Dekaiser, who

allegedly told Losinski that Plaintiff could eat while performing his work duties. Plaintiff alleges that after Losinski returned to the guard area, he looked at Plaintiff in a menacing way and stated, "And so it begins." (Compl. ¶ 34, PageID.7.)

Plaintiff was called to the control center for a misconduct review on June 13, 2013. Plaintiff alleges that Sergeant Beechem normally conducted misconduct reviews, but Defendant Losinski took it upon himself to review Plaintiff's misconduct. Defendant Losinski allegedly stated, "you again" in reference to the incident in the chow hall. Plaintiff claims that he had not seen Losinski since that incident in 2011. Plaintiff insisted that Losinski did not have the authority to review the misconduct. Losinski offered Plaintiff five days' loss of privileges if he pleaded guilty to the offense. Plaintiff refused the offer and continued to question Losinski's authority, which seemed to infuriate him. Because Plaintiff refused to accept the plea, Losinski processed the misconduct for a hearing.

Plaintiff claims that on September 13, 2013, while Plaintiff was speaking to a food service steward regarding his food portion, Defendant Losinski accused Plaintiff of re-entering the food line. When Losinski asked Plaintiff who gave him permission to re-enter the food line, Plaintiff responded that he did not re-enter the food line and had the right under MDOC policy to speak to the food steward. The following day, Plaintiff was called to control center for review of a Class II misconduct issued by Losinski for violating posted rules by re-entering the food service line. Plaintiff contends that Losinski wrote the misconduct in retaliation for Plaintiff exercising his right to speak with food service staff. It appears that Defendant Borst also reviewed Plaintiff on a Class II charge for possession of gambling paraphernalia, although it is unclear whether that charge also was brought by Defendant Losinski. Plaintiff told Defendant Borst, who conducted the misconduct

review, that she did not have authority to review the misconduct with him. Plaintiff refused Borst's offer of seven days' loss of privileges, so she set the misconduct for hearing. Following an administrative hearing conducted by Defendant Scheidler, Plaintiff was found guilty of the charged offenses and given a sanction of three days' loss of privileges for violating posted rules by re-entering the food service line and four days' loss of privileges for possession of gambling paraphernalia. Plaintiff objected to the punishment imposed by Defendant Scheidler on the ground that it was imposed pursuant to MDOC Policy Directive 03.03.105 (Prisoner Discipline), which was implemented in violation of Michigan law.

On October 7, 2013, Plaintiff sent a letter to Defendant Hoffner regarding her staff's use of an illegal policy to impose punishment upon prisoners who are engaged in protected conduct. Plaintiff further warned Hoffner that her staff's conduct resulted in various adverse effects upon Plaintiff, including cell confinement, disqualification for certain types of employment, including geriatric aid, and loss of pay. In addition, the misconduct convictions could result in his transfer to a higher security level and a reduced likelihood of getting released on parole. According to Plaintiff, Hoffner "implicitly authorized, and approved those under her employ to run rampant under the guise of administrative rehabilitative goals." (Compl. ¶ 61, ECF. No. 1, Page ID No. 11.) Plaintiff alleges that Hoffner responded by stating that she was forwarding his concerns to Defendant Beckwith. Plaintiff contends that as the immediate supervisor of LCF staff, Defendant Beckwith neglected her duty by allowing LCF to inflict illegal punishment upon him.

Plaintiff contends that Defendant Houtz engaged in racial discrimination and retaliated against him for threatening to complain to her superior by bringing false misconduct charges against him. Plaintiff further asserts violations of his Eighth and Fourteenth Amendment

rights against Defendants Losinski, Borst, Schiedler and Friend arising from the misconduct proceedings. Plaintiff also claims that Defendant Losinski retaliated against him for exercising his First Amendment rights by issuing a false misconduct charge against him. In addition, Plaintiff contends that Defendants Borst, Losinski, Scheidler and Friend conspired to violate Plaintiff's constitutional rights by imposing sanctions upon him through an invalid policy. Finally, Plaintiff claims that Defendants Hoffner and Beckwith violated his constitutional right when they failed to take corrective action. Plaintiff seeks declaratory relief, as well as compensatory and punitive damages.

## Discussion

### I.     Statute of limitations

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

Plaintiff's claim against Defendant Houtz is untimely. The events giving rise to Plsintiff's claim against Houtz arose in 2011. Plaintiff had reason to know of the "harms" done to him at the time they occurred. Hence, his claims accrued in 2011. However, he did not file his complaint until 2015, a year after Michigan's three-year limit expired. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). Moreover, the Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See Dellis*, 257 F.3d at 511; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL 31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000). Accordingly, Plaintiff's claim against Houtz will be dismissed as frivolous.

    II.    <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While

a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Supervisory Liability**

Plaintiff fails to make specific factual allegations against Defendant Warden Hoffner and Deputy Warden Beckwith, other than his claim that they failed to take corrective action in response to his letter regarding the alleged unconstitutional conduct of their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Hoffner and Beckwith engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

B.      **Fourteenth Amendment Due Process**

Plaintiff alleges a violation of the procedural protections of the Fourteenth Amendment's Due Process Clause arising from the Class II misconduct convictions. A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated

any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). Under Michigan Department of Corrections Policy Directive 03.03.105, ¶ B, a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. (*See* Policy Directive 03.03.105, ¶ AAAA). Plaintiff, therefore, was not denied good time or disciplinary credits as a result of his Class II misconduct convictions. The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Moreover, none of the adverse consequences of the misconduct convictions complained of by Plaintiff implicate the Due Process Clause. Plaintiff does not have a federally cognizable liberty interest in prison employment. *See Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"). Thus, the loss of a prison job or disqualification from certain types of prison employment is not a matter of constitutional dimension. Moreover, a prisoner has no constitutional

right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). Furthermore, Plaintiff does not have a liberty interest in being released on parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc). Consequently, Plaintiff fails to state a procedural due process claim against Defendants Schiedler, Borst, Losinski and Friend arising from his Class II misconduct convictions.

        C.     **Eighth Amendment**

Plaintiff also contends that Defendants Schiedler, Borst, Losinski and Friend violated his Eighth Amendment rights in the misconduct proceedings. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In this case, the sanction for Plaintiff's misconduct was 7 days' loss of privileges. Mere confinement to a cell or loss of privileges for a few days does not rise to the level of cruel and

unusual punishment proscribed by the Eighth Amendment. In fact, the Supreme Court has recognized that the more serious sanction of placement in segregation, which involves even greater restrictions on a prisoner's privileges, is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347); *see also Jones v. Waller*, No. 98-5739, 1999 WL 313893, at *2 (6th Cir. May 4, 1999). Moreover, the filing of a false misconduct report does not constitute punishment under the Eighth Amendment. *See Williams v. Reynolds*, No. 98-2138, 1999 WL 1021856, at *2 (6th Cir. 1999) ("[N]either verbal harassment or threats nor the filing of a false misconduct report constitute punishment within the context of the Eighth Amendment.") (citing *Ivey*, 832 F.2d at 955 and *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)); *see also Bruggeman v. Paxton*, 15 F. App'x 202, 205 (6th Cir. 2001) (a prisoner's claim that he was punished on the basis of a false misconduct report fails to state an Eighth Amendment claim). Plaintiff, therefore, fails to state an Eighth Amendment claim.

D. **Conspiracy**

Plaintiff contends that Defendants Borst, Losinski, Scheidler and Friend conspired to violate his constitutional rights by imposing sanctions upon him through an invalid policy. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602

(6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. His allegations, even viewed in the light most favorable to Plaintiff, describe a number of discrete facts that occurred over a period of time involving numerous individual officers. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them. He relies entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances with which he disagreed. As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring during the course of Plaintiff's incarceration were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

### E.    **Retaliation**

Plaintiff contends that Defendant Losinski wrote a Class II misconduct against him in retaliation for Plaintiff exercising his right to speak to the food steward about his food portion. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this stage of the proceedings, Plaintiff's allegations are sufficient to warrant service of Plaintiff's retaliation claim against Defendant Losinski.

### F.    **State law**

Plaintiff alleges throughout his complaint that Defendants Hoffner, Beckwith, Scheidler, Borst, Friend and Houtz acted in violation of state statutes, administrative rules and the Michigan Constitution. He further claims that the MDOC policy governing prisoner discipline violates state law. Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants Hoffner, Beckwith, Scheidler, Borst, Friend and Houtz violated state law

therefore fails to state a claim under § 1983.  Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction.  In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims.  *Id*.  Dismissal, however, remains "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).  Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction.  Accordingly, Plaintiff's state-law claim against Defendants Hoffner, Beckwith, Scheidler, Borst, Friend and Houtz will be dismissed without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Hoffner, Beckwith, Scheidler, Borst, Friend and Houtz will be dismissed as frivolous or for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and 42 U.S.C. § 1997e(c).  Plaintiff's state-law claims against Defendants Hoffner, Beckwith, Scheidler, Borst, Friend and Houtz also will be dismissed without prejudice.  Plaintiff's action against Defendant Losinski will be dismissed for failure to state a claim upon which relief may be granted, with the exception of Plaintiff's retaliation claim.

An Order consistent with this Opinion will be entered.

Dated: March 24, 2016                                         /s/ Robert Holmes Bell
                                                              ROBERT HOLMES BELL
                                                              UNITED STATES DISTRICT JUDGE